**FILED**

UNITED STATES DISTRICT COURT  MAY 11  P 2: 24
DISTRICT OF CONNECTICUT

U.S. DISTRICT COURT

| | |
|---|---|
| MAHESH K. TALWAR | : Civil Action No. |
| | 3:01cv01089(SRU) |
| v. | : |
| | : |
| STATE OF CONNECTICUT, | : |
| DEPARTMENT OF MOTOR VEHICLES AND | |
| DEPARTMENT OF ADMINISTRATIVE SERVICES | : May 10, 2004 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION IN LIMINE TO EXCLUDE CERTAIN EVIDENCE**

On August 3, 1999 while working at the Residence Inn in Danbury Connecticut, the Plaintiff, Mahesh Talwar was accused of sexual misconduct by a hotel guest.

The plaintiff denied the accusation, however, he was arrested and charged with Risk of Injury, a violation of Connecticut General Statute 53-21(2) and Sexual Assault in the 4th degree in violation of Connecticut General Statute 53a-73a(a)(2).

On December 15, 2000, Carroll, J., dismissed all charges against the Plaintiff at G.A. 3 in Danbury, Connecticut, Docket Number CR-00-108989. (Tab "A").

**Evidentiary Standard**

Federal Rule of Evidence 401 defines "relevant evidence" to mean "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would e without the evidence." Rule 402 provides that relevant evidence I admissible and that evidence which is not relevant is not admissible. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially

Page 1 of 4

outweighed by the danger of unfair prejudice, confusion of the issues or misleading to jury, or by considerations of undue delay, waster of time or needless presentation of cumulative evidence." Grounds for exclusion under Rule 403 include "risks which range all the way from inducing decision on a purely emotional basis, at one extreme to nothing more harmful than merely wasting time, at the other extreme." Advisory Committee Notes to Rule 403. The Advisory Committee Notes further state that unfair prejudice "means an undue tendency to suggest decision on an improper basis, commonly, through not necessarily, an emotional one."

In *Williams v. Drake*, 146 F. 3d 44, 48 (1st Cir. 1998), the First Circuit held that Rule 403 "constitutes a tool that trial judge can use to keep a jury's attention riveted on the dispositive issues." There, the jury excluded evidence which "could well have crated an unwarranted sideshow, drawing attention from the main event" and could have tempted the jury to find against plaintiff on the proffered evidence rather that on evidence on the central issue.

Connecticut General Statute Section 54-142a provides for the erasure of criminal records for the protection of those accused where charges have been dismissed and states in relevant part:

> (a) Whenever in any criminal case, on or after October 1, 1969, the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of any state's attorney pertaining to such charge shall be erased upon the expiration of the time to file a writ of error or take an appeal, if an appeal is not taken, or upon final determination of the appeal sustaining a finding of not guilty or a dismissal, if an appeal is taken.

All records relating to this charge have been erased by the court.

To allow the defendant to resurrect this charge through the presentation of evidence found at tab "B" would be unfair prejudice whose probative value is substantially outweighed by the danger of unfair prejudice and could mislead the jury.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the above-referenced evidence be excluded from trial, along with such other relief as the Court deems just and proper.

Robert B. Muchinsky
39 Russ Street
Hartford, CT 06106
Telephone: 860-297-0037
Facsimile: 860-297-0040
Federal Bar No.: ct12702

## CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed, postage prepaid, to the following counsel and pro se parties of record on May 11, 2004.

**Defendants:**

Eleanor Mullen
Assistant Attorney General
55 Elm Street, PO Box 120
Hartford, CT 06141-0120

**Filing Location:**

Clerk of Court
United States District Court
95 Lafayette Boulevard
Bridgeport, CT 06604

Robert B. Muchinsky

| INFORMATION | | | | SUPERIOR COURT | |
|---|---|---|---|---|---|
| JD-CR-71.5 Rev. 9-98 | DOB: 4/13/59 | | | TITLE, ALLEGATION AND COURT ACTION | |

**STATE OF CONNECTICUT VS. (Name of Accused):** Talwar, Mahesh
**G.A. NO.:** 3
**DOCKET NO.:** PBD CR01-108989

The undersigned Deputy Assistant State's Attorney of the Superior Court of the State of Connecticut on oath of office charges that said Deputy Assistant State's Attorney has reason to believe and does believe that:

**ADDRESS:** Park Ave. Danbury, CT
**TO BE HELD AT (Town):** Danbury
**COURT DATE:** 5-3-00

| | CONTINUED TO | PURPOSE | REASON |
|---|---|---|---|
| | 5/15 | PDSA | |
| FIRST COUNT - DID COMMIT THE OFFENSE OF: Risk of Injury | 6/12 | | |
| AT (Town): Danbury  ON OR ABOUT: 8/3/99  IN VIOLATION OF GENERAL STATUTE NO. 53-21(2) | 6/25 | X aw | |
| SECOND COUNT - DID COMMIT THE OFFENSE OF: Sexual Assault in the 4th Degree | 7/24/00 | D-VN | |
| AT (Town): Danbury  ON OR ABOUT: 8/3/99  IN VIOLATION OF GENERAL STATUTE NO. 53a-73a(a)(2) | 7-24-02 | DAC | |
| THIRD COUNT - DID COMMIT THE OFFENSE OF: | | | |

☐ SEE OTHER SHEET(S) FOR ADDITIONAL COUNTS
**DATE:** 4-14-00
**SIGNED (Deputy Asst. State's Attorney)**

## COURT ACTION

**DEFENDANT ADVISED OF RIGHTS BEFORE PLEA** (JUDGE) (DATE)
**BOND:** 1,000
**SURETY:**
☐ 10% ☒ CASH
**ELECTION:** ☐ CT ☒ JY (Date)
**SEIZED PROP. INVENTORY NO.**

☒ ATTORNEY ☐ PUB. DEFENDER  **GUARDIAN:** 6/15
**BOND CHANGE:**

| COUNT | PLEA DATE | PLEA | PLEA WITHDRAWN DATE | NEW PLEA | VERDICT FINDING | FINE | REMIT | ADDITIONAL DISPOSITION |
|---|---|---|---|---|---|---|---|---|
| 1 | 5/3 | NG | | | | $ | $ | dismissed |
| 2 | " | " | | | | $ | $ | dismissed |
| 3 | | | | | | $ | $ | |

STATE OF CONNECTICUT SUPERIOR COURT GEOGRAPHICAL AREA #3 AT DANBURY
JAN 10 2001
CERTIFIED COPY SEAL AFFIXED
BY _____ Deputy CLERK

### OTHER COURT ACTION

| DATE | | JUDGE |
|---|---|---|
| 5-12-00 | Motion for a Continued Order of Sealing of Supporting Affidavits Granted. Open as to Defense Counsel Only | Resha |
| 5-30-00 | Objection to "Motion for Continued Order of Sealing Affidavit | Carroll |
| 12/15/00 | Motion for Dismissal and Termination of AR - granted by Judge Carroll | Carroll |

**PLAINTIFF'S EXHIBIT 31**

AR 100 - #04459  7/24/00 WIN

**RECEIPT NO.** | **COST** ☐ IMP ☐ NCI | **BOND INFORMATION** ☐ BOND FORFEITED | ☐ FORFEITURE VACATED | ☐ FORFEITURE VACATED AND BOND REINST
**APPLICATION FEE - RECEIPT NO. IF PAID** | **CIRCLE ONE** W I Q | **PROGRAM FEE - RECEIPT NO. IF PAID** | **CIRCLE ONE** W I Q | **PROBATION FEE - RECEIPT NO. IF PAID** | **CIRCLE** W
**STATE'S ATTY. ON ORIGINAL DISPOSITION:** Rochicchio | **REPORTER/MONITOR ON ORIG. DISP:** Miller | **SIGNED (Clerk):** Talavia | **SIGNED (Judge):** _____ See Back ☐

Date: 8/3/99

Present: Ms. Jeannie Smith, Mr. Ron Lucas, Mr. Maruzzella, and Ms. Fran Johnson
Statement prepared by: Peter Maruzzella
Witness: Fran Johnson

Ms. Smith explained the incident that occurred during the third shift on August 3, 1999. The alleged incident took place between Ms. Smiths' Daughter, Erica, and the hotel's night auditor, Mahesh Talwar.

Ms. Smith said that her daughter was in the Lobby/Gatehouse area the evening of August 3rd waiting for the project team to arrive. It was late but her daughter didn't mind waiting. Her daughter explained the incident to her mother as follows:

Erica was waiting in the lobby area and was also on the couch watching TV. She had some conversations with guests that were in and out of the lobby area. Mahesh came over to Erica and asked her to go for a walk and Erica agreed. Mahesh and Erica proceeded to go behind the Front Desk and into the Front office Managers office. Erica said that Mahesh touched her breasts and rear area and tried to take her shirt off. Erica said: no I don't want to do this, and ran away. Erica proceeded out the door and up the stairs to room 215. Erica ran to Mr. Moody's room because she knew him and he was an associate of her mothers. Mr. Moody took Erica to her room and alerted Mrs. Smith as to the situation.

After hearing her daughters account of the incident, Mrs. Smith came downstairs to speak with Mahesh. Mrs. Smith approached the desk and told Mahesh she came to speak about her daughter. Mahesh immediately came out from behind the desk and said, I didn't touch your daughter. Mrs. Smith went outside and spoke to one of her associates, a Mr. Wayne Flattery. Mr. Flattery and Mrs. Smith went back to room 203 and Mr. Flattery called the police.

The police arrived a few minutes later and took statements from all the parties involved. Mrs. Smith was unable to recall any of the exact times of the incident.

Mr. Lucas stated that the team was due back at 12mid and that they were running late because they stopped at an Exxon station to get cigarettes. They arrived at the hotel at approximately 1:20am – 1:30 am. They saw Mrs. Smith outside and then proceeded to unload their data. Mr. Lucas said that he and Ray Moody spoke to Erica around 12 mid and told her to stay inside the hotel and that they were going to their rooms. Erica stated she was going to her room as well.

Both Mrs. Smith and Mr. Lucas are upset about the incident and would like to know the truth. However, upon Mrs. Smith request, this incident must be kept confidential among our Residence Inn staff and among her staff. She has enjoyed her stay here and the staff. Mrs. Smith stated she is not looking for any refunds or seeking damages from the hotel or Marriott and does not want to press charges against any member of our staff. I promised I would do everything in my power to resolve this incident and will honor her wish of confidentiality.

_____    _____
Mrs. Jeannie Smith                                                                      Date August 4, 1999

August 4, 1999

Mr. Dan DiMartino

On August 2, 1999 I arrived at the hotel about 12:30am. When coming in the front entrance I saw Mahesh hastily walking to the front desk from the TV area. I the saw Ms. Smith and said hello and we chatted for a few minutes. At this time, it was about 12:45am. I then went to my room. I talked with my wife a few minutes and decided to eat a snack. While the food was heating up in the oven, I went to the kitchen to grab a coke. I came down the stairs about 1:20am when I reached the lobby Mahesh started to walk towards the front desk and stood there. Ms. Smith was sitting in the chair watching TV. I went into the kitchen to get a coke and I realized I left my cup on the counter in the lobby. When I opened the door to get the cup, Mahesh and the girl were sitting next to each other talking. I shut the door got the coke and walked back out. The girl was gone and Mahesh was still in the lobby. As I was entering, the elevator Mahesh brought the cup to me. It was about 1:40am when I went up to my room and started telling my wife what I saw. Our food was done about done about 2am. We began to eat and the telephone rung it was Mahesh. I gave the telephone to my wife. She said the police were here and she had to go downstairs. I escorted her downstairs.

Julius Sylvas

*[signature]* Julius Sylvas 8/4/99

August 4, 1999

Mr. Dan DiMartino

On August 2, 1999 my husband arrived home about 12:45am. I sent him to the kitchen to get a coke and when he returned he began telling me that Mahesh was watching TV and talking to some girl. I decided to eat, then go, and see if I could catch Mahesh watching TV. He has been warned of this before. When we were eating, our food Mahesh called and said the police were here and he needed me down at the front desk. I got dressed and went to the desk. There were two officers at the desk and several police cars outside. I asked them what was going on and they said there was a complaint against Mahesh from one the guest. When the other police officers came downstairs, I asked them the same question. They told me the girl accused Mahesh of touching her. In the middle of all this, I called Peter to let him know what was going on. We went back in forth on the phone and he asked if the police would like to speak with him, they said they would get statements from the people involved and speak with him the next day. The police wanted to know about the video camera and what did it pick up. I told them it picked up the front entrance. They asked to see the tape, I put the tape in the VCR, and we began watching several tapes. In the meantime, they were waiting on their chief investigator. It was his decision to whether or not to arrest Mahesh. When he arrived, he asked to speak to me. He asked me about Mahesh and I explained to him I have only been here a couple of weeks. They then questioned Mahesh. It is about 5am and they were getting ready to leave. I asked for a police report and they said they would see Peter the next day and discuss that with him. They took pictures of my office and they left. It was told to me she is the girl that was caught with an 18-19 year old man making out in the pool. Franklin told Hanna that the girl had no pants on at the elevator. I asked what were they doing in the pool and Hanna said making out. She said she saw them on the TV monitor. I have seen what appears to me that the girl was drunk. She made a comment she had a rough night.

Yvette Sylvas

*/s/ Yvette Sylvas*

August 5, 1999

Mr. Mahesh Talwar
97-99 Park Ave
Pinewood Circle
Danbury, CT 06801

Dear Mahesh,

You have been put on administrative leave without pay or benefits. While on administrative leave you may not visit the Residence Inn hotel or communicate with any of the associates. You may call me if you have any questions or concerns.

We will do our best to resolve this matter as quickly as possible and notify you of any changes.

Sincerely,


Peter Maruzzella
General Manager

July 3, 1999

## INCIDENT REPORT
## DATED AUGUST 2,1999

This incident occurred on August 2, 1999 at Residence Inn, Danbury CT. I started my work at 10:45 PM on that day. Before, I started Hannah was working at the front desk and she left around 11.00 PM. After that I was talking to the houseman (Franklin) for fifteen twenty minutes. After he left I started work on my computer. Around 12.30 PM I saw Mrs smiths daughter in the lounge, she was going in and out of the door and she told me that she could not sleep as she works different hours everyday. I saw her talking to Julius for couple of minutes and then he left. I saw her leaving the building. She came back after half an hour or forty-five minutes and went back up to her room, I believe. After a while her mother came down and told me that she is going to call the police because I was harassing her. I was shocked to hear that. I told her instead of her I would call the police because I did not do anything wrong. She immediately backed out and said she didn't want to call the police and went back to her room. She eventually called the police from her room because the cops were in the hotel after 10-15 minutes. The cops went in her room and talked to them. They did not question me or talked to me. I called my supervisor immediately as the police arrived, as she was staying in the hotel in the second floor. She came down immediately. She talked to the police after that couple of times and gave them the video recordings. The police officer called the investigator. The investigator came and took my phone number and name and told me he is going to write a report and then he left.

Mahesh Takwar

UC-840 (Rev. 8/95)

LOCAL OFFICE STAMP

Stamford Connecticut Works
1340 Washington Blvd.
Stamford, CT 06902-2403
Fax 203-348-4531

**State of Connecticut Department of Labor**
**Employment Security Division**

## NOTICE OF HEARING AND UNEMPLOYMENT COMPENSATION CLAIM

8/27

Danbury Suites LLC
Residence Inn
22 Segar St
Danbury CT 06810

fed ex 8/30

Re: M. Talwar
S.S. No. 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
Date Mailed: 8-20-99

The above-named individual has filed a claim for unemployment compensation and has named you as a former employer. The individual's reason for separation was stated as follows:

Discharged No Valid Reason Given

A hearing has been scheduled in this office __9-1-99__ (DATE) at __2:30 PM__ (TIME)

for the purpose of determining entitlement to benefits.
AN AWARD OF BENEFITS MAY RESULT IN A CHARGE TO YOUR ACCOUNT WHICH MAY INCREASE YOUR TAX RATE FOR UP TO THREE (3) YEARS. YOU SHOULD PARTICIPATE IN THIS HEARING, IN PERSON OR BY SUBMITTING A TIMELY WRITTEN RESPONSE, AND PROVIDE US WITH ANY INFORMATION YOU MAY HAVE CONCERNING THE CIRCUMSTANCES OF THIS INDIVIDUAL'S SEPARATION OR ELIGIBILITY FOR BENEFITS. ANY INFORMATION YOU SUBMIT WILL BE PROVIDED TO THE INDIVIDUAL AT THE HEARING. NONPARTICIPATION BY THE EMPLOYER IN THE PREDETERMINATION HEARING COULD RESULT IN LIABILITY FOR UNEMPLOYMENT COMPENSATION CHARGES FOR UP TO SIX (6) WEEKS AFTER THE WEEK IN WHICH AN APPEAL IS FILED TO THE REFEREE EVEN IF THE REFEREE REVERSES THE INITIAL DETERMINATION OF ELIGIBILITY. You are entitled to have any person, including an attorney, represent you at this hearing. You may present evidence, documents or witnesses. You have the right to cross-examine witnesses or parties present as deemed appropriate and relevant by the examiner. The hearing may be continued (postponed) for a reasonable length of time if, during the hearing, the examiner decides that you need to obtain additional evidence, documents, or witnesses.

If it is not possible for you to attend the hearing, you should furnish pertinent information by completing and returning the Fact-Finding Supplement. IN ORDER TO BE CONSIDERED TIMELY, AN EMPLOYER'S WRITTEN RESPONSE MUST BE RECEIVED IN THE LOCAL OFFICE AT THE ADDRESS INDICATED ABOVE BY THE CLOSE OF BUSINESS ON THE SCHEDULED HEARING DATE. You may use the enclosed pre-addressed, postage-free envelope for this purpose, or may fax your response. Your written information will be given full consideration in making the determination. IF YOU FAIL EITHER TO RETURN THIS NOTICE OR TO NOTIFY US OF YOUR INTENT TO MAKE A STATEMENT, THE CLAIM WILL BE DETERMINED ON THE BASIS OF AVAILABLE INFORMATION.

BENEFITS MAY BE PAID IMMEDIATELY, IF ALLOWED, EVEN THOUGH AN APPEAL IS FILED.
PLEASE CHECK THE APPROPRIATE BLOCK TO INDICATE WHETHER OR NOT YOU WILL ATTEND THE HEARING:
☐ Yes   ☒ No

If you do not plan to attend the hearing but you do respond in writing, send a stamped self-addressed envelope if you would like a copy of the Fact-Finding report. Please check the appropriate block below.

_____   8/30/99
(SIGNATURE OF EMPLOYER OR REPRESENTATIVE)   (DATE)

3. Were any alternatives, other than leaving, available to the individual? If "yes" explain. _____
_____

4. Were these alternatives explained to the individual? _____
_____

Please use the space provided on the reverse side of this page to give any further information or documentation you believe relevant regarding the individual's separation from your employ. (Attach additional sheet if necessary.)

B. **DISCHARGE**

1. Why was the individual discharged? If a specific incident triggered the discharge, describe the incident and give the date it occurred.
   *8/2/99 - Alleged incident of Misconduct with guest.*

2. If the incident constituted deliberate misconduct, how was the individual's action or omission contrary to your business interests? Why do you consider the incident deliberate?
_____
_____

3. If the incident was a knowing violation of a workplace rule or policy, describe the rule or policy. How did the individual know of the rule or policy? Describe any prior warnings regarding this violation. What was the impact of the violation on your business? Do you treat similarly situated employees in a similar manner when the rule or policy is violated? (If no, explain.)
_____
_____

4. If the discharge was due to absenteeism, give the date of the final instance of absenteeism and the dates of any prior instances in the eighteen months prior to the final instance. For each instance, including the final instance, indicate whether the individual gave notice and the reason for each absence. Did you consider each reason given good cause for the absence?
_____
_____

Please use the space provided on the reverse side of this page to give any further information or documentation you believe relevant regarding the individual's separation from you employ. (Attach additional sheet if necessary.)

C. **RETIREMENT**

1. Was the retirement   ☐ voluntary   ☐ involuntary?

2. Would the individual's position have been eliminated or would he/she have been laid off if he/she did not retire? Explain.
_____
_____

3. ... ............... with the closing of your facility?   ☐ Yes   ☐ No

4. Is the individual receiving or about to receive a pension from your company?   ☐ Yes   ☐ No

What reason did the individual give for his/her retirement? _____

I HAVE READ THE ABOVE SUMMARY OF MY ORAL STATEMENT AND I HEREBY ATTEST THAT THE FACTS ARE TRUE AND CORRECT. I UNDERSTAND THAT A COPY OF THIS STATEMENT MAY BE GIVEN TO ANY INTERESTED PARTIES UPON REQUEST. IF MY CLAIM FOR UNEMPLOYMENT COMPENSATION BENEFITS IS APPROVED, I UNDERSTAND THE DECISION COULD BE REVERSED BY A HIGHER AUTHORITY, AND I AGREE TO REPAY ANY AMOUNTS TO WHICH IT IS DETERMINED I AM NOT ELIGIBLE.

DATE TAKEN: 09-01-99    CLAIMANT'S SIGNATURE: _Signed_

EMPLOYER STATEMENT    ☐ IN PERSON    ☑ BY MAIL (SUMMARIZE UC-840)    ☐ NONE

MEETS PARTICIPATION REQUIREMENTS    ☑ YES    ☐ NO

DISCHARGE — ALLEGED INCIDENT OR MISCONDUCT WITH GUEST.

I HAVE READ THE ABOVE STATEMENT WHICH IS A SUMMARY OF MY ORAL STATEMENT, AND I HEREBY ATTEST THAT THE FACTS GIVEN ABOVE ARE TRUE AND CORRECT. I UNDERSTAND THAT A COPY OF THIS STATMENT MAY BE GIVEN TO ANY INTERESTED PARTIES UPON REQUEST.

EMPLOYER'S SIGNATURE:

| SS# | NAME TALWAR, MAHESH | ADDRESS CHANGE ☐ YES ☒ NO | IF YES COMPLETE UC 721 | BR/DATE 0609 |
|---|---|---|---|---|
| ISSUE(S) SEPARATION | | ELEMENT OF CONTROVERSY WILFUL MISCONDUCT | | |

| CLAIMANT DATA & WORK HISTORY: | FIRST WEEK AT ISSUE 08-22-99 | WKS. CL. 2 | AGE 40 | SEX M | HEALTH RESTRICTION ☐ YES ☒ NO | STUDENT ☐ YES ☒ NO |
|---|---|---|---|---|---|---|

1. EMPLOYER AT ISSUE: DANBURY SUITES LLC

SEP. REASON: DISCH
DATES WORKED FROM: 06/27/99 TO 08/02/99

OCCUPATION: NIGHT AUDITOR
YRS. EXP.: 12
HOURS WORKED PER: 40/WK
SHIFT: NIGHT
☒ FULL TIME ☐ PART TIME
RATE OF PAY: 10.00 PER HOUR

2. PRIOR EMPLOYER (IF APPLICABLE): [blank]

3. SUBSEQUENT EMPLOYER(S): [blank]

CLAIMANT STATEMENT: I WAS TERMINATED BY DANBURY SUITES ON 8/2.
I WAS GIVEN NO WARNINGS.
THERE WAS NO FINAL INCIDENT.
I WAS DOING MY WORK TO THE BEST OF MY ABILITY.
I WAS PAID NO SEVERANCE PAY.
I WAS PAID NO VACATION PAY.